May it please the Court. My name is Samantha Ruscavage-Bars and along with my colleague Daniel Timmons I represent the appellant WildEarth Guardians. I'd like to reserve four minutes for rebuttal. Time and again Congress has urged federal water project managers to consider environmental values in their project operations. With respect to the Corps of Engineers specifically, Congress has gone even further and mandated that the Corps take into account and elevate environmental concerns as a co-equal purpose with its other project operations when it can do so without compromising the original purpose of the project authorization. And the Army Corps has abided by this for decades. But set against this clear statutory background, the Corps claims now that it does not have the statutory authority to operate its Middle Rio Grande dams to benefit listed species, even though it can do so and still remain consistent with and not undermine the flood control purposes in the 1960 Flood Control Act. So the issue before this Court today is whether the Army Corps does in fact have discretion to modify its dam operations to benefit listed species, thereby triggering Section 7's consultation requirement. And the answer to that question is yes, if this Court and when this Court considers the Corps' duties under the Constellation of Water Operation statutes, also the case law holding that only some discretion is required to trigger the consultation requirement, and finally looking at the Corps' prior practice of deviating from its normal water operations to benefit listed species. Let's start with the statute. The Flood Control Acts look fairly categorical, and that's really what the Corps hangs its hat on in its 2014 reassessment. But where's the wiggle room in the statute itself to get us to a discretionary posture? Your Honor, the wiggle room in the statute is really in that Section D, which comes at the very end. So the beginning of the statute says the Corps will operate its Middle Rio Grande dams solely for flood and sediment control. And then it goes on to lay out a reservoir regulation plan that has operational parameters in it. Section D, at the very end, says that the Corps will follow everything that is in the statute except if it receives consent from the Rio Grande Compact Commission to operate differently than what's in the statute. That's really the key provision of the statute that gives the Army Corps discretion to operate differently. Well, they don't have the discretion unless they're directed by the Commission, right? Your Honor, they have the discretion if they receive consent from the Commission. So the Army Corps can request to deviate from normal operations from the Compact Commission. How do we get their permission? I know they've done it in the past, but if the Corps chooses not to seek permission or consent from the Commission, can they be required to seek permission to exceed operating practices to benefit listed species? Your Honor, under the Endangered Species Act consultation provision, the Corps is required to consult. So the question is, is the Corps required to consult? And it's required to consult where its operations will adversely affect a species and the Corps has discretion to do so. And so the starting point or the question is, is there something in the Flood Control Act that gives the Corps discretion to act? And because the answer to that is yes, the Corps must consult. When the consultation concludes and the Corps and the Fish and Wildlife Service have together come up with measures that are going to prevent species jeopardy, minimize adverse modification to critical habitat, it is at that point that the Corps would then seek permission from the Compact Commission to operate differently from what's in the Flood Control Act. Well, doesn't the Compact Commission have to direct the Corps to deviate from the Flood Control Act? No, Your Honor. As an initial matter, it's not the affirmative duty of the Compact Commission to order the Corps to deviate. The Corps, through consultation, has measures imposed on it from the Fish and Wildlife Service to take to benefit listed species. In the 2003 biological opinion for the Middle Rio Grande, the Fish and Wildlife Service, in coming up with its reasonable and prudent measures to avoid jeopardy, acknowledges in the biological opinion that the Corps will have to seek Compact Commission consent and that the RPMs are subject to Compact Commission approval. If I can understand the logic of your position, then, because the Act allows the Corps to exceed the statutory mandate upon consent by the Commission, that means that it has an obligation to consult with other federal agencies regarding listed species. And then, at that point, make a request to the Compact Commission? Yes, Your Honor. That's how it works and that's how it's worked in the past. And the Ninth Circuit has recognized that it's not the degree or amount of discretion that an agency has, the standard is actually some discretion. And if an agency has some discretion to take action, that triggers the requirement to consult. And the Army Corps has always recognized that it had some discretion to act because of that consent provision and, in the past, has done so and has modified its operations to do that. It re-evaluated in 2014 and decided to the contrary. What's the fatal flaw in the 2014 reassessment document? Your Honor, an agency is entitled to change its mind, even if it's been operating in a certain way year after year. But when an agency decides to depart from its longstanding practice, it has to provide a reasonable explanation. And what a reasonable explanation entails that we learned from FCC v. Fox Television is that the agency has to show an awareness that it's changing position, good reasons for the new position, and explain why it's disregarding the previous facts and circumstances underlying its previous position. And the Army Corps has not done that here. The record shows that what triggered the Corps to do the re-evaluation in the first place was that it was squabbling with the Fish and Wildlife Service over whether the service would provide the Corps an agency-specific biological opinion. Whereas in the past, in 2003, the biological opinion was for both Bureau of Reclamation and Army Corps operations together. And so as a result of not getting what it wanted from the Fish and Wildlife Service, the Army Corps said, we're going to evaluate to see whether we even have to consult in the first place. Does that squabble matter? Why do we care that there was a squabble? Your Honor, it's important because the Army Corps' reassessment and the reasons that it's giving for not having to consult were not triggered by any kind of recent case law or change in circumstances or amendment of the Flood Control Act or anything like that. The record clearly shows that the Corps decided that it needed to take this action because of what was happening internally. If we were to conclude that the plain language of the Flood Control Act does not give the Corps discretion, none of that would matter, would it? No, Your Honor. So we have to agree with the Ninth Circuit in your argument that the fact that they could get permission means that they have discretion for purposes of consulting? Yes, Your Honor, because what the Army Corps did in its reassessment in reconsidering and evaluating its discretion based on the language of the Flood Control Act is it did not pay any attention or follow the canons of statutory construction that say you cannot take a word or a phrase in a statute out of context. What the Corps focuses on is the phrase solely for flood and sediment control. It ignores that Section D that says the Corps can deviate from its statutory mandate when it receives permission from the Compact Commission. But if you look at the statute as a whole, it also has Sections A and B that make it pretty clear that they require water releases during certain months at the maximum rate of flow that can be carried at the time without causing flooding. I mean, there's some specific, if you look at the whole thing, it is pretty narrow in terms of the amount of wiggle room the Corps has under the statute to do things other than what they've expressly been told to do by Congress. Yes, Your Honor, the statute includes the specific reservoir regulation plan that the Compact Commission wanted to see in there. And then the provision in Section D is Congress's recognition that things may change in the future. It at least gives an out clause so that the Corps may have reason in the future to deviate from those operations. And then looking at subsequent statutes that speak to the importance of dam operations, taking into account things like listed species, subsequent statutes inform the Corps' exercise of that discretion. The Fish and Wildlife Conservation Act, the Water Resources Development Acts that require that the Corps take environmental issues into account, and even the 2018 Water Infrastructure Act that requires that the Corps restart those fill-and-spill deviations. All of those subsequent statutes inform the Army Corps in how it should exercise its discretion. Well, under subsection D, if the Compact Commission doesn't offer any advice, just silence, the phone's not ringing, no mail, where is the obligation to go ahead and demand advice, I guess? Why can't it just sit there? And you stick with subsection A and B and you don't have the subsection D override, if that's what you want to call it. Section D applies when the Army Corps wants and needs to do something different. And so it would request from the Compact Commission permission to do so. In the past, the trigger to go to the Compact Commission was the reasonable and prudent measure in the 2003 Biological Opinion. And in subsequent acts, Congress has recognized and the Compact Commission has granted the Corps permission to deviate from those operations, specifically to meet the requirements of the 2003 Biological Opinion. So what really comes first is the consultation. And then the measures that the Corps needs to take to protect species as a result of that consultation is what the Corps takes to the Compact Commission. How do you get around the Home Builders case that they principally rely on? Your Honor, Home Builders simply doesn't apply here because the construction of that Clean Water Act statute is different from the construction of the Flood Control Act here. There, the statute had nine specific enumerated provisions that, if met, required EPA to grant permitting authority to the state. So that was the construction of, if fined, then shall take a certain action. Here, the statute is the Corps must operate in this manner unless it receives consent to operate otherwise. So Home Builders simply doesn't apply here because it's a different statute. And if I may, I'd like to reserve the remainder of my time for rebuttal. You may. Thank you. May it please the Court. My name is Michael Gray. I'm here on behalf of the Army Corps of Engineers. Section 7 of the Endangered Species Act applies when there is an agency action in which there is discretionary federal involvement or control. And the Flood Control Act here, the 1960 Flood Control Act, leaves the Corps with no discretion in its actions. The action the Corps takes under the act are simply to implement the reservoir regulation plan that Congress enacted as part of the statute. And that regulation plan sets both the floor and the ceiling, requiring the Corps to pass all Rio Grande water up to the maximum safe channel, which the Corps determined is 7,000 cubic feet per second, and then to retain floodwaters and release them at that maximum rate as fast as they can. That admits of no discretion in the routine implementation of those statutory protocols. What do we do about the emergency provisions and the consent of the commission provisions? I think that they have to be given meaning. And the plaintiffs place far too much weight on those provisions that they cannot hold, in particular the provision allowing an exception for a departure from the operating protocols with the advice and consent of the Compact Commission. And you have to remember that that provision allowing that exception was enacted 12 years before the Endangered Species Act and 35 years before these species were listed. And so that provision is really talking about departures that come up that are necessary for the purposes of the statute, which are flood control. And yet, you have a history of interpreting it so that you can seek permission to operate your dams in a way that are consistent with protecting the environment for the endangered species. We've made two deviations in the past, one in 2007 and then the 2009 to 2013 deviations. And both of those involve a supplemental source of authority from Congress, which the plaintiffs talked about, to implement the 2003 biological opinion. There was a statute in 2006 that gave the Corps the authority to go ahead and engage in projects to implement that provision. Then that was amended in 2008 and 2009 to allow the Corps study authority to implement that provision. And so with that additional source of authority, yes, the Corps then went engaged with the Compact Commission and said we have an additional source of authority from Congress. We would like to depart in order to study the effects of this departure. May we do so? And the Compact Commission agreed. But that does not mean that absent such a supplemental source of authority, that the exception allowing departures would require the Corps. I mean, effectively, what they're reading it as is saying the ability to depart in some manner from the statute imposes a duty on the Corps to examine whether it ought to depart from the statutory requirements. And really, that provision can't hold that weight because an exception to a statute that says solely for flood and sediment control, operate it this way in the interests of flood and sediment control, and follow this reservoir regulation schedule and do it at all times except in situations where you have the advice and consent, that can't then authorize the Corps to rewrite the statute or to say every year, okay, well, are there considerations out there that would require us to depart from our statutory mandate? And what they're asking is essentially, you know, go consult and then come up with what would be a long-term or a permanent removal from what the statutory language requires. And it just can't support that. I think what they're arguing is if you look at subsequent legislation, there's clear indication that Congress wants the Corps to consider when it can the accommodation of endangered species. And so if you have the ability to do both things, protect for flood control and to accommodate the species, then that's what you should do. And I think that that's probably true in most Corps projects. But this Middle Rio Grande project is very different from most Corps projects because most Corps projects you have a situation where Congress says, okay, build in accordance with the Chief of Engineers report. We will, for the purposes of flood control, navigation, hydroelectric power, whatever, and there's a balance. This is like the Missouri River cases. There's a balance, and the Corps can take it into account. But this is a very different statute, and it's different for a reason. Because of the Rio Grande Compact and because of the concerns of Texas, that a dam in the location that it was ultimately built would jeopardize deliveries under the compact. And so in that situation, in this unique situation, Congress has said, these are the only purposes that you can operate for. And not only that, we're going to prescribe, essentially, the manual. All of these Corps projects, they go through a process to develop these reservoir regulation manuals that govern the operations. But here, the manual is essentially in the statute. And in that situation, it really looks a lot like home builders then. Because effectively, what they're saying is, you should add the Endangered Species Act as a purpose of this statute and consult on it. And home builders says, no, you don't do that. The Endangered Species Act is powerful, but it's not that powerful. It doesn't amend statutory commands in that way. And so this ability to depart from clear statutory commands in certain circumstances doesn't imply a duty to then take into account the Endangered Species Act, which might require completely rewriting the reservoir regulation plan that's in the statute. Have there been other deviations allowed by the Compact Commission in addition to the two species protective ones? I will preface this by saying I don't think this is in the record. But, yes, for example, when the Corps was studying the maximum safe channel capacity, there's often not enough water to get to what would be the maximum. So they sought and obtained approval from the Compact Commission to depart for the purposes of studying that, so that they withheld some water and then had a higher channel at the time, which is directly related to the purposes of the statute. And we would submit that that's what the departure provision was really getting at, is there may be circumstances that are directly related to flood or sediment control that don't follow exactly the protocols that we've prescribed. And you can do that with the advice and consent of the Compact Commission. But it couldn't have been to add an entirely different purpose of species protection because the Endangered Species Act didn't exist at that time. And Home Builders tells us that it doesn't add it retroactively. I will just say one thing on the idea that we have changed our view on consultation, and that's in the 2003 buy-up, which we engaged in a joint consultation, makes clear, and this is in the joint appendix at 541, that the federal agencies are, because of pending litigation, the federal action agencies are consulting on the effects of total river depletions without identifying particular aspects of the overall action as discretionary or nondiscretionary. But in 2014, in your reassessment, the Corps specifically described that it had broad reach of past consultations as a result, in part, of a view of agency discretion that was overly broad. That suggests to me that the Corps was viewing it as discretion. I think what that is getting at is the idea that the Corps was saying, we're going to participate with reclamation. They didn't really take the kind of look, action by action, that they took in 2014. And I think that's what the biological opinion supports that because it says they looked at the overall action and didn't try to do aspects that are discretionary or nondiscretionary. In 2014, the Corps said, well, we're going to take that look now and went through the reassessment process and said, you know, actually we think that we don't have this discretion and so we don't believe we need to consult. Unless there are further questions, I would submit that the district court be affirmed and that the court hold that there is no requirement to engage in Section 7 consultation here. Thank you, counsel. Counsel, you have some rebuttal time? Thank you. May it please the court, I just have a few points to make in response. And this goes to two of the points that opposing counsel made was about the deviations receiving congressional support and then also that Guardians is somehow arguing that the Corps should be consulting with the Fish and Wildlife Service over actions it's not proposing to take. And my response to that comes with going back to the very beginning, is that this is a case about failure to consult. And we are asking the Corps, this court, to find that the Army Corps violated the ESA by not consulting over dam operations. And the remedy is to order the Army Corps to resume its consultations with the Fish and Wildlife Service. It starts at the very top with the question of consultation over dam operations. As a result of that process, there could be measures that are put in place to protect listed species. And then it's those measures which the Army Corps may need to ask the Compact Commission for consent to do. In the prior authorizations that opposing counsel mentioned, he said the deviation riders from Congress provided a supplemental source of authority. But those provisions specifically said that the Army Corps could perform the deviations in order to comply with the biological opinion. So that came first. And so the question is, does that Flood Control Act provision provide an opportunity for the Corps to do something to benefit listed species? And because it does, the Corps would then consult with Fish and Wildlife Service. And the actions that came out of that are the actions that the Army Corps would seek consent for. Not for deviations that it's done in the past, not for anything specific that it might, anything specific that would be speculative, but specifically for what it would say in a biological opinion was necessary. My second point is that the Compact Commission consent provision was really put in place to protect Texas and to get Texas' buy-in to be able to build Cochiti Dam in the first place. Opposing counsel said that his interpretation of it is that it's meant to be a deviation that only has something to do with the project purpose of flood or sediment control. That is not found anywhere in the statute. So it's simply not supported by the legislative history. Thank you. Thank you, counsel. Your time's expired. I appreciate the arguments. That was clarifying. Counsel are excused and the case shall be submitted.